**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**RUTHIE FAYE SEALS,**   Case No. 1:18 CV 1345

    Plaintiff,

    v.   Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.   MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Ruthie Faye Seals ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 10). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in August 2015, alleging a disability onset date of February 23, 2015. (Tr. 137-38). She later amended her alleged onset date to August 8, 2016. (Tr. 153). Her claims were denied initially and upon reconsideration. (Tr. 83-94). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 95-96). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on September 13, 2017. (Tr. 26-54). On September 18, 2017, the ALJ found Plaintiff *disabled* in a written decision. (Tr. 13-24). On November 9, 2017, the Appeals Counsel sent Plaintiff notice of its review of the ALJ's decision.

(Tr. 130-35). In response, Plaintiff submitted additional evidence. *See* Tr. 535-81. On April 19, 2018, the Appeals Council vacated the ALJ's decision and issued a new decision, finding Plaintiff *not disabled*. (Tr. 1-10). The Appeals Council's decision is thus the final decision of the Commissioner in this case. See 20 C.F.R. §§ 404.979, 404.981. Plaintiff timely filed the instant action on June 13, 2018. (Doc. 1).

**FACTUAL BACKGROUND**

<u>Personal Background and Testimony</u>

At the time of the hearing, Plaintiff lived alone. (Tr. 33). She had a driver's license and drove to the grocery store and church. (Tr. 34). She had a Master's degree in psychology, and past work as a therapist. (Tr. 35-36).

Plaintiff testified that because of her depression, she had low energy and no appetite. (Tr. 40). She testified she stopped taking medication for her depression "[b]ecause it wasn't helping". (Tr. 43). She also noted that it made her drowsy so she would just take it "once or twice a week" and "felt if [she] ate proper food and took over-the-counter medication[,] [she] would probably do better." *Id.*; *see also* Tr. 44 (noting she stopped medication because made her drowsy and low-energy). She believed her diabetes caused the depression. (Tr. 44).

<u>Relevant Medical Evidence</u>

In December 2015 – prior to her alleged onset date – Plaintiff underwent a consultative psychiatric examination with Natalie Whitlow, Ph.D. (Tr. 326-33).[1] Dr. Whitlow concluded that she could not "gather sufficient information to determine an accurate and reliable DSM-5 diagnosis for the constellation of symptoms that the claimant described" and therefore she was "unable to

---

1. The date of the evaluation is December 18, 2015 (Tr. 326), however the date of the report is January 2, 2016 (Tr. 333).

determine if the claimant experiences any mental health symptoms that impair her ability to effectively engage in the work world." (Tr. 332).

In January and March 2016, State agency physicians Leslie Rudy, Ph.D., and Todd Finnerty, Psy.D., respectively, reviewed Plaintiff's records and determined the evidence did not establish a medically determinable mental impairment. (Tr. 62, 73).

In August 2016, Plaintiff saw Brian Nwaozuzu, C.N.P. (Tr. 397-403). Plaintiff reported a history of depression, and that she felt "severely depressed" and wanted help. (Tr. 397). Plaintiff reported symptoms of insomnia, loss of interest in activities, and not wanting to stay in bed. *Id.* On examination, Plaintiff had a depressed mood, lethargic behavior, poor eye contact, and tense posture. (Tr. 398). She had a labile mood, fluent and coherent speech, and was cooperative and pleasant. *Id.* Mr. Nwaozuzu diagnosed recurrent major depression, prescribed mirtazapine, encouraged Plaintiff to see a social worker, and ordered a psychiatry consultation. (Tr. 399). That same day, Plaintiff completed a psychiatry intake by phone with Lisa Johnson, L.S.W. (Tr. 531).

In October 2016, Plaintiff reported she thought she was able to sleep better since starting the mirtazapine. (Tr. 388). At that same visit, Plaintiff scored a zero on the "PHQ-9"[2], answering "not at all" to questions about whether, e.g., she felt depressed, had trouble sleeping, or had little interest or pleasure in doing things. (Tr. 395-96).

At a December 2016 visit for diabetes and hypertension monitoring, Plaintiff reported a history of depression. (Tr. 380). On examination, the provider noted she was positive for

---

2. The PHQ–9 is the depression module of the Patient Health Questionnaire (PHQ), which is "a self-administered diagnostic instrument for common mental disorders[.]" http://www.ncbi.nlm.nih.gov/pubmed/11556941 (last visited June 3, 2019). It "scores each of the 9 DSM–IV [Diagnostic and Statistical Manual] criteria as '0' (not at all) to '3' (nearly every day)." *Id.*; *see Moore v. Comm'r of Soc. Sec.*, 2015 WL 586053, at n.8 (S.D. Ohio), *report and recommendation adopted*, 2015 WL 1468344.

3

depression, and negative for sleep disturbance. (Tr. 382). The provider continued Plaintiff's major depressive disorder diagnosis, but noted she "report[ed] subjective improvement in mood." *Id.*

In January 2017, Plaintiff reported active involvement with Bible study at church, and that she "ha[d] a lot more social stimuli." (Tr. 372). A review of systems was negative for sleep disturbance. (Tr. 373). The "assessment/plan" did not include depression. *See* Tr. 374.

The diagnosis of depression, and prescription for mirtazapine was continued in April 2017, but Plaintiff's depressive disorder was noted to be "[s]table". (Tr. 364). Plaintiff's PHQ-9 score was "3", interpreted as "None-Minimal Depression". (Tr. 356-57). In July 2017, Plaintiff's past medical history was noted to include depression. (Tr. 346). The provider noted she had "no complaints today" and was "[d]oing well." *Id.* A list of medications included mirtazapine (Tr. 348). Plaintiff was noted to have "[n]o depression, anxiety, sleep disturbance" in the review of systems section of this record, and was not assessed with a depressive disorder. (Tr. 350-51).

In November 2017 (after the ALJ's decision), mirtazapine was included in Plaintiff's list of prescriptions (Tr. 542, 547), and her past medical history was noted to include depression (Tr. 545), but on review of symptoms, the provider noted "[n]o depression, anxiety, sleep disturbance" (Tr. 548) and she was not assessed with depression. In December 2017, a list of outpatient prescriptions included mirtazapine. (Tr. 539). This record otherwise contains no reference to depression or related symptoms. (Tr. 538-40).

ALJ Decision

In his September 2017 decision, the ALJ found Plaintiff met the insured status requirements for DIB through February 28, 2018, and had not engaged in substantial gainful activity since August 8, 2016 (her amended alleged onset date) (Tr. 19). The ALJ found Plaintiff had severe impairments of diabetes mellitus, prominent patellofemoral arthritis of the left knee

and subchondral injuries with arthritic changes in the right knee, essential hypertension, chronic stage III kidney disease, anemia, and depression, but that these impairments – singly or in combination – did not meet or medically equal a listed impairment. *Id.* He then concluded Plaintiff had the following mental residual functional capacity ("RFC"):

> She can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g. assembly line work). She can make simple work related decision[s] in using her judgment and dealing with changes in a work setting.

(Tr. 20). Based on this RFC, the ALJ found Plaintiff was unable to perform any past relevant work based on her mental limitations. (Tr. 23). Because of this, the ALJ determined a finding of disabled was directed by Medical-Vocational Rule 202.06. *Id.* He thus found Plaintiff disabled beginning August 8, 2016. (Tr. 24).

Appeals Council Decision

In its April 2018 decision, the Appeals Council vacated the ALJ's decision. (Tr. 4-10). The Appeals Council found Plaintiff had not engaged in substantial gainful activity since August 8, 2016. (Tr. 8). It concluded Plaintiff had severe physical impairments, but no severe medically determinable mental impairment, and that Plaintiff's impairments did not meet or medically equal a listed impairment. (Tr. 8-9). The Appeals Council then concluded Plaintiff retained the RFC to perform a limited range of light work, and was able to perform her past relevant work as a clinical therapist. (Tr. 9). The Appeals Council thus concluded Plaintiff was not disabled from her amended alleged onset date (August 8, 2016) through the date of the ALJ's decision (September 8, 2017). (Tr. 9-10).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

5

correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues, in essence, that the ALJ got it right, and the Appeals Council got it wrong. The Commissioner responds that the Appeals Council's determination is supported by substantial evidence and should be affirmed. For the reasons discussed below, the undersigned affirms the Commissioner's decision.

Where, as here, the Appeals Council vacates an ALJ's decision and issues one of its own, the Appeals Council's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.979. And, this Court is authorized to review only the "final decision" of the Commissioner. 42 U.S.C. § 405(g)**.** Thus, the question before the Court is whether the Appeals Council's decision that Plaintiff's depression was not a severe medically determinable impairment that satisfied the durational requirement is supported by substantial evidence.[3]

---

3. Thus, Plaintiff's framing of the question before this Court as "Did [the ALJ] properly find that [d]epression was a severe medically determinable impairment?" is inaccurate. Although the Court is sympathetic to Plaintiff's situation here – being told that she was disabled and entitled to benefits

7

Medically Determinable Impairment

The Appeals Council first explained: "Here, while there is a diagnosis of major depression from August 2016, this assessment was offered by a provider who is not an acceptable medical source." (Tr. 7); *see also* Tr. 5 ("In this case, the existing record does not show that the claimant's alleged mental impairment of depression as assessed by an acceptable medical source[.]").

At Step Two of the sequential evaluation process, the claimant must show that he suffers from a "severe medically determinable physical or mental impairment." *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 54 1, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Symptoms alone cannot constitute a "medically determinable impairment"; there must be "medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment[.]" SSR 96-4p, 1996 WL 374187, at *2. A diagnosis of a "medically determinable impairment" must be made by an "acceptable medical source[]." 20 C.F.R. § 404.1513 ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."); SSR 06-03p, 2006 WL 2329939, at *2 (evidence from an acceptable medical source is necessary to establish the existence of a "medically determinable impairment"). A certified nurse practitioner is not an "acceptable medical source" under the regulations but is an "other source." *See* 20 C.F.R. § 404.1513(d). Evidence from "other sources" as defined in the regulations cannot establish the existence of a "medically determinable impairment" but may provide insight into the severity of the individual's impairment and how it affects the individual's

---

only to quickly have that decision reversed – this Court only reviews the "final decision" of the Commissioner pursuant to 42 U.S.C. § 405(g). In the instant unusual situation where the Appeals Council issues an independent decision, it is possible under the Court's standard of review for *both* the ALJ's decision and the Appeals Council's decision to be supported by substantial evidence. The statute, however, dictates that only the Appeals Council's decision is under review here.

ability to function. *Cruse v. Comm'r of Soc. Sec,* 502 F.3d 532, 541 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2.

Plaintiff correctly points out that "[s]ubsequent doctors have noted this diagnosis and continued the medication." (Doc. 11, at 6); *see* Tr. 364, 382. The undersigned finds it unnecessary to determine whether the notation of the diagnosis and continuation of medication by subsequent providers who are "acceptable medical sources", 20 C.F.R. § 404.1513, is sufficient to establish Plaintiff's depression as a medically determinable impairment because, as discussed below, the Appeals Council provided an alternative substantially supported basis for its decision.

Duration Requirement

The Appeals Council noted that even if Plaintiff's depression diagnosis was valid, it did not meet the twelve-month duration requirement. *See* Tr. 7 ("Moreover, even if we were to accept Mr. Nwaozuzu's assessment, subsequent records show a rapid improvement in symptoms, and by October 2016, her symptoms had resolved. Consequently, the available records do not show that the durational requirement has been satisfied with regard to the claimant's alleged depressive disorder."); *see also* Tr. 5 ("In this case, the existing record does not show that the claimant's alleged mental impairment of depression. . . satisfies the durational requirement to be considered severe."). The undersigned finds this analysis supported by substantial evidence.

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(3)(A). Thus, the regulations have a duration requirement: an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Plaintiff bears the burden of

proving the existence of a medically determinable impairment that meets the twelve-month durational requirement. *Jones*, 336 F.3d at 474.

The Appeals Council in this case held that, even if Plaintiff's depression qualified as a "medically determinable impairment", the record demonstrated it did not meet the twelve-month duration requirement. It noted that Plaintiff's first depression diagnosis was in August 2016 and that subsequent records showed "rapid improvement". (Tr. 7). This is supported by the record. In October 2016, Plaintiff reported improvement with medication, and scored a zero on the PHQ-9, answering "not at all" to questions regarding depressive symptoms. (Tr. 396). Her depression was noted again in December, but with "report[ed] subjective improvement in mood" (Tr. 382), and a January 2017 record did not include depression in the "assessment/plan" section (Tr. 374). By July 2017 – eleven months after the initial diagnosis – Plaintiff was noted to have "[n]o depression, anxiety, sleep disturbance" in the review of systems section of this record, and was not assessed with a depressive disorder. (Tr. 350-51).

The Appeals Council gave Plaintiff the opportunity to submit additional evidence in response to its proposed action. *See* Tr. 130. Plaintiff did so. *See* Tr. 535-81. However, as the Appeals Council explained:

> Although this submission consists of 43 pages of medical records, the majority are duplicates of evidence previously submitted and found at Exhibit 6F. Among these records are two new treatment records reflecting that the claimant was seen on November 27, 2017 and December 4, 2017 (Exhibit 7F, pages 4-19). As an initial matter, we note that these records relate to treatment received well after the Administrative Law Judge issued the decision on September 18, 2017. Further, while the record from November 13, 2017 referenced depression under past medical history, the claimant had no complaints that day and reported doing well (Exhibit 7F, page 11). The clinical examination that day was entirely unremarkable and there was no indication of any mental symptoms or deficits (Exhibit 7F, pages 14-15). This information does not warrant a change in our proposed action.

(Tr. 7). The undersigned therefore finds substantial evidence – that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion", *Besaw*, 966 F.2d at 1030 – supports the Appeals Council's determination that Plaintiff failed to satisfy her burden to establish a medically determinable mental impairment that met the twelve-month duration requirement. That is, substantial evidence supports a finding that Plaintiff did not show her depression "continued unabated for at least 12 months" from the time of her August 2016 diagnosis. *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 300 (6th Cir. 2001).

Further, the Appeals Council explained that the record did not support the ALJ's finding that Plaintiff's "depression produce[d] moderate limitation in understanding, remembering, or applying information, and moderate limitations in concentrating, persisting, or maintaining pace[.]" (Tr. 7). This was so, it explained, because "[b]ased on the available records, we find that the claimant has mild limitations in all the functional areas discussed in 20 CFR 404.1520a." *Id.*; *see also* Tr. 8 ("[T]he available records do not establish a severe medically determinable mental impairment or mental work-related limitations[.]"). This is supported by the Appeals Council's analysis of the evidence, which, as discussed above, revealed minimal mental findings. *See* Tr. 6.

For these reasons, the undersigned finds the Appeals Council's determination supported by substantial evidence. As such, it is affirmed.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and affirms that decision.

    s/ James R. Knepp II
United States Magistrate Judge